UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

JACQUELINE ROGERS,                      :

                    Plaintiff,          :

     -against-                          :

THE BANK OF NEW YORK MELLON             :      09 Civ. 8551 (HBP)
f/k/a, THE BANK OF NEW YORK
COMPANY, INC., DARLANE HOFFMAN,         :      REDACTED OPINION
MANAGING DIRECTOR, in her                      AND ORDER[1]
individual and professional             :
capacity, DONALD MCCARTHY,
in his individual and                   :
professional capacity,
CHARLES PARKER in his individual        :
and professional capacity,
ROSEMARY LYNCH, in her individual       :
and professional capacity,
ROSANNE BODNAR in her individual        :
and personal capacity and
LAURA DESIDERIO in her                   :
individual and professional
capacity,                               :

                    Defendants.         :

----------------------------------X


TABLE OF CONTENTS

I.  Introduction ...............................................1

II. Facts ......................................................2

---

[1]This redacted Opinion and Order is identical to the Opinion
and Order that was filed under seal in this matter on July 14,
2016 (Docket Item 88) except that the names of plaintiff's
comparators, which appeared on page 43 of the July 14 Opinion and
Order, have been replaced with pseudonyms in consideration of the
comparators' privacy interest in their salary information.

A.  Overview ............................................2

B.  Plaintiff's Employment
    with the Bank....................................4

C.  Unequal Terms and
    Conditions of Employment ........................6

D.  Failure to Promote ..............................8

E.  Sexual Harassment and
    Hostile Work Environment ........................8

    1.  Photos and Videos of
        Plaintiff and Rumors and
        Comments Regarding These Materials...........8

    2.  Racially Offensive
        Materials On or Near
        Co-Workers' Desks...........................10

F.  Allegedly Retaliatory
    Discipline Based
    on Plaintiff's
    Late Arrivals to Work ..........................12

III. Analysis .........................................13

A.  Legal Standards ................................13

    1.  Summary Judgment ...........................13

    2.  Overview of
        Discrimination Law .........................17

        a.  Title VII and NYSHRL ...................17

        b.  NYCHRL .................................19

    3.  Salary-Related
        Disparate Treatment ........................22

        a.  Equal Pay Act ..........................22

b.  Denial of Promotions
and Career Development ......................22

i.  Title VII and NYSHRL .................22

ii. NYCHRL ...............................24

c.  Disparate Treatment
Based on Unequal Pay .....................25

i.  Title VII and NYSHRL .................25

ii. NYCHRL ...............................28

4.  Hostile Work Environment .........................29

a.  Title VII and NYSHRL .......................29

b.  NYCHRL......................................32

5.  Retaliation ......................................34

a.  Title VII and NYSHRL .......................34

b.  NYCHRL .....................................37

B.  Analysis of
Plaintiff's Claims ...................................39

1.  Overview .........................................39

2.  Unequal Terms and
Conditions of Employment .........................40

a.  Title VII and NYSHRL Claims ...............40

b.  Equal Pay Act Claim .......................45

c.  NYCHRL Claim ..............................46

d.  Summary ...................................47

3.  Sexual Harassment and
Hostile Work Environment .........................47

a.   Title VII and NYSHRL Claims ................47

b.   NYCHRL Claim ...............................54

4.   Retaliation ....................................57

a.   Title VII and NYSHRL Claims ...............57

b.   NYCHRL Claim ...............................67

IV. Conclusion ...........................................70

PITMAN, United States Magistrate Judge:

I.  Introduction

In this employment discrimination action, plaintiff, an African-American woman and former employee of the Bank of New York Mellon (the "Bank"), alleges that she was discriminated against on the basis of her gender, race, color[2] and national origin and that she was the victim of retaliation as a result of her complaints about discrimination.  Based on this alleged conduct, plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., the New York State Executive Law §§ 290 et seq., ("New York State Human Rights Law" or "NYSHRL"), the New York City Administrative Code §§ 8-107 et seq. ("New York City Human Rights Law" or "NYCHRL") and the Equal Pay Act, 29 U.S.C. § 206.  Plaintiff claims that, as a result of defendants' discriminatory and retaliatory animus, she was denied promotions, career opportunities and equal pay,

---

[2]It is unclear whether plaintiff is using the terms "race" and "color" interchangeably.  Because the Supreme Court has noted that terms "race" and "color" describe two independent character-istics, Ozawa v. United States, 260 U.S. 178, 197 (1922); see The U.S. Equal Employment Opportunity Commission, "Discrimination by Type: Race/Color Discrimination," available at https://www.ee-oc.gov/laws/types/race_color.cfm (last visited July 12, 2016), and plaintiff's complaint was drafted by counsel, I assume that plaintiff is not using the terms interchangeably and is alleging discrimination on each basis.  Inexplicably, defendants' memoran-dum of law does not address plaintiff's claims that she was discriminated against on the basis of her color.

subjected to unequal conditions of employment, subjected to a hostile work environment and subjected to retaliatory discipline.

Defendants have moved for summary judgment dismissing plaintiff's claims, and plaintiff has opposed the motion. For the reasons set forth below, defendants' motion is granted in part and denied in part.[3]

II.   Facts

   A.   Overview

Despite its being drafted by counsel, the complaint in this matter is far from clear; it contains several allegations that do not make sense and suggest that the complaint was copied from a pleading in another, unrelated case and not properly adapted. For example, at paragraph 50, the complaint alleges: "As a result of BONY/MELLON'S acquiescence to ROGERS harassment Complaint, Rogers was subject to name callings [sic]; i.e., "Crazy Black B----, She's Crazy, Did You See What She was Doing on her Couch." To acquiesce means to accept, to agree or to allow something to happen by remaining silent. Thus, the forego-

_____

[3]Although defendants moved for summary judgment on plain-
tiff's race, color and gender discrimination claims, defendants'
memorandum of law does not address plaintiff's claim that she was
discriminated against on the basis of national origin. Thus,
this aspect of her claims is unaffected by defendants' motion.

ing paragraph appears to allege that as a result of the Bank's acceptance of or agreement with plaintiff's complaint, she was subjected to verbal harassment; I do not understand what plaintiff is trying to say in this paragraph.

Similarly, in paragraph 65 of the complaint, plaintiff alleges: "On or about March 2007, plaintiff was forced to go on Long Term Disability.  Thereafter, on or about March 2009, BONY/MELLON permanently severed ROGERS['] employment relationship by applying and facilitating for her the granting of Permanent Disability benefits pursuant to Social Security Disability Insurance."  I am not aware of any provision of the Social Security Act that permits a current or former employer to apply for Social Security Disability Insurance Benefits ("DIB") on behalf of a former employee.  Moreover, in order to receive DIB an individual must be physically or mentally unable to engage in substantial gainful activity for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A).  Thus, if paragraph 65 is accurate, it would appear that any potential liability for back pay terminates no later than March 2009, when plaintiff was found to be physically or mentally unable to work.[4]

---

[4]Plaintiff does not identify the disability that resulted in her being eligible to receive DIB.

3

Finally, in paragraph 145 of the complaint, which alleges violations of the NYCHRL, plaintiff states:

> Defendants['] discriminatory conduct based on Plaintiff's, national origin and gender as well as in retaliation for her whistle blowing and complaints of discriminatory conduct by other members of the Department of Finance and in retaliation for her opposition to discrimination, constitutes discrimination in violation of the New York City Administrative Code § 8-107 et. seq. and the New York City Human Rights Law.

There are no allegations or evidence in this matter concerning "whistle blowing" or the Department of Finance -- a New York City agency.

The complaint appears to have been drafted on the cheap and it shows. Despite the murky nature of the complaint, the record demonstrates that plaintiff's claims arise out of allegedly unequal terms and conditions of employment including unequal pay and a failure to promote plaintiff, sexual harassment and an allegedly hostile work environment and allegedly retaliatory conduct. The record discloses the following facts.

B.  Plaintiff's Employment
     with the Bank

Plaintiff began her employment with a predecessor to the Bank in 1988 (Pl. Response to Def. Rule 56.1 Statement, dated Jan. 28, 2015 ("Pl. Rule 56.1 Stmt.") ¶ 1). From 2002 through August 2006, plaintiff worked as a senior secretary and then as

4

an office manager in the Technology Sector of the Bank under the supervision of Managing Director Darlane Hoffman (Pl. Rule 56.1 Stmt. ¶ 1; Complaint ¶¶ 10, 12, 21, 29).

Between 2002 and 2006, plaintiff made several complaints to her supervisor and others at the Bank about discrimination and harassment (Pl. Rule 56.1 Stmt. ¶ 2). Plaintiff summarized her complaints in a letter she sent to the attention of the "Non-Management Director" at the Bank on May 23, 2006 (Decl. of Howard M. Rogatnick in Supp. of Def. Motion for Summary Judgment, dated Dec. 5, 2014 ("Rogatnick Decl."), Ex. 17).[5] These complaints are described in detail at pages 6-13, below. In August 2006, plaintiff had a "nervous breakdown" and went out on disability leave (Pl. Rule 56.1 Stmt. ¶¶ 1, 9; Deposition of Jacqueline Rogers (Ex. 3 to Rogatnick Decl.), at 159-60).[6]

---

[5]In or about June 2006, plaintiff also filed a complaint with the New York District Office of the Equal Employment Opportunity Commission ("EEOC") (Pl. Rule 56.1 Stmt. ¶ 5; Rogatnick Decl. Ex. 8 (attaching EEOC "INTAKE QUESTIONNAIRE" dated June 30, 2006)). After an investigation, the EEOC found no evidence of discriminatory or retaliatory conduct on the part of the Bank and dismissed plaintiff's complaint on July 2, 2009 (Pl. Rule 56.1 Stmt. ¶¶ 5-7, 79; Rogatnick Decl., Ex. 10).

[6] Mr. Rogatnick's declaration attaches excerpts from plaintiff's deposition. The Declaration of Stewart L. Karlin, Esq., dated Jan. 28, 2015 includes additional excerpts from plaintiff's deposition (some of which are duplicative of those attached to Mr. Rogatnick's declaration). For the sake of clarity and brevity, references to plaintiff's deposition are hereafter identified as "Pl. Dep." and the following page citations are
(continued...)

Plaintiff did not return to work after August 2006, and her employment with defendants officially ended in July 2009 (Pl. Rule 56.1 Stmt. ¶ 1).

> C.   Unequal Terms and
>      Conditions of Employment

Plaintiff claims she was treated less favorably than her male and white counterparts in that she was placed on a longer "salary review cycle"[7] and received a smaller salary (Pl. Rule 56.1 Stmt. ¶¶ 65-66; Rogatnick Decl., Ex. 25, 27).  Plaintiff also claims that in December 2004, she was promoted from senior secretary to office manager, but did not receive a commensurate increase in salary (Pl. Rule 56.1 Stmt. ¶¶ 49-50; Pl. Decl. ¶ 6).

Defendants assert that plaintiff's salary and the decision to place her on an 18-month salary review cycle (rather than a 12-15 month review cycle), "were consistent with Bank

---

[6](...continued)
meant to refer to the attachment to Mr. Karlin's declaration: 68-70, 114-15, 202, 210, 212-19, 258-61, 285-89, 296-99, 333-34, 348-51.  The remainder of the page citations can be found in the attachment to Mr. Rogatnick's declaration.

[7]The length of a salary review cycle determines when an employee will be reviewed by the Bank for a salary increase (Pl. Rule 56.1 Stmt. ¶ 66).  Thus, an employee with a longer salary review cycle will be considered for raises less frequently than an employee who is reviewed on a shorter cycle.

policy, appropriate to Ms. Rogers' position at the Bank, and consistent with the treatment of others similarly situated" (Def. Mem. of Law in Supp. of Motion for Summary Judgment, dated Dec. 5, 2014 ("Def. Mem.") at 5, 21; see also Deposition of Rose Anne Bodnar (Ex. 4 to Rogatnick Decl.) at 104-05). Defendants have provided a chart that sets forth the salaries of several office managers for the 2002 - 2006 time period, including the white office managers that plaintiff claims were paid more than she (Rogatnick Decl., Ex. 29; see Rogatnick Decl. Ex. 28; Pl. Decl. 257-61, 265-66). This evidence shows that at the time of plain- tiff's promotion to office manager, she was paid less than all but one of the white office managers identified in this chart (Rogatnick Decl., Ex. 29). According to this chart, the highest paid office manager was white and was paid more than $10,000 per year more than plaintiff on the date plaintiff was promoted to office manager; the chart also shows that many of the other office managers received pay raises every twelve to fifteen months in the 2002 - 2006 time period (Rogatnick Decl., Ex. 29). Although the chart only shows plaintiff's salary on a single date, defendants concede that plaintiff was on an 18-month salary review cycle (Pl. Rule 56.1 Stmt. ¶¶ 65-66).

7

D.   Failure to Promote

Plaintiff's complaint vaguely alleges that plaintiff was denied promotions and "Job Title changes" (Complaint ¶ 34). She claims that she was advised by the Bank's Human Resources Department that she should "'not . . . expect promotions or certain positions because they won't be offered to her'" (Complaint ¶ 35).   Plaintiff further claims that the foregoing comments were made to her after she complained that she was paid less than other office managers (Complaint ¶ 36).

However, plaintiff testified at her deposition that she did not apply for any promotions while she was employed in the Technology Sector between 2002 and her departure from the Bank (Pl. Dep. 222-23; Pl. Rule 56.1 Stmt. ¶¶ 50, 52).

E.   Sexual Harassment and
     Hostile Work Environment

     1.   Photos and Videos of
          Plaintiff and Rumors and
          Comments Regarding These Materials

Plaintiff also alleges that she was being stalked by someone who circulated, throughout the Bank, photos and videos of her in her home in "various states of undress" and "supposedly talking to [herself]" (Pl. Decl. ¶¶ 20-21; Pl. Dep. 74, 76).

8

Plaintiff complained to Human Resources about this alleged
conduct and identified at least 18 individuals who she believed
had knowledge of the photos and videos (Rogatnick Decl., Ex. 13,
18).  Although plaintiff alleges that these materials were widely
distributed (Pl. Rule 56.1 Stmt. ¶ 13; Pl. Dep. 349), plaintiff
admitted in her deposition that she never saw any of the photos
or videos; plaintiff has also failed to offer any documents or
testimony from anyone with firsthand knowledge of the existence
of the photos and videos (Pl. Rule 56.1 Stmt. ¶¶ 20-22; Pl. Dep.
387, 389).

Plaintiff also asserts that she was subjected to
offensive remarks and comments, specifically that she overheard
individuals stating that: (1) plaintiff talked to herself; (2)
"[plaintiff] should be thanking me, I took [her] off the
internet"; (3) "watching [plaintiff] is like a 'freak show,'" (4)
plaintiff should "slit [her] wrist" and (5) "It's a wonder
[plaintiff has not had] a nervous breakdown"; plaintiff also
claims that one person told plaintiff that she was "talking to a
live person" and that others would laugh and mock plaintiff upon
seeing her (Declaration of Jacqueline Rogers, dated Jan. 28, 2015
("Pl. Decl.") ¶¶ 22, 31, 33; Complaint ¶¶ 39-41; Pl. Dep. 68, 74-
78, 93-95, 143).  In addition, plaintiff claims that one individ-
ual she did not know called her a "crazy black bitch" (Pl. Decl.

9

¶ 31; Pl. Dep. 143-44).  Plaintiff believes that these comments and actions referred to the pictures and videos of her that were being circulated at work (Pl. Dep. 137, 143-44; Pl. Decl. ¶¶ 25, 31).  Plaintiff has identified some of the individuals that made these comments but states that she did not know the names of the others (Pl. Dep. 62-64, 68-69, 74-78, 93-95, 143-44).

In response to plaintiff's complaints regarding the putative photos and videos, the Bank conducted two investigations, one in 2002 and one in 2006 (Pl. Rule 56.1 Stmt. ¶¶ 15-19).  Defendants did not uncover any evidence substantiating the existence of the photos or videos (Pl. Rule 56.1 Stmt. ¶¶ 15-19).  Plaintiff claims that the investigations were deficient and not properly conducted because defendants did not take her complaints seriously, did not keep the investigations confidential and because the harassment got worse after the investigations[8] (Pl. Rule 56.1 Stmt. ¶¶ 14-19; Pl. Decl. ¶¶ 26, 38).

2.  Racially Offensive
    Materials On or Near
    Co-Workers' Desks

Plaintiff also claims that some employees who sat across the hall from her had racially offensive materials in the

_____

[8]Plaintiff does not explain how the allegedly increased harassment implies a deficient investigation.

10

office (Pl. Dep. 121, 128; Pl. Rule 56.1 Stmt. ¶¶ 40-47).
Specifically, plaintiff claims that two employees had ten to
twelve "Homies" figurines on their desks (Pl. Dep. 117-22).
Plaintiff describes "Homies" as depicting "Blacks and Hispanics
in urban blight" (Pl. Decl. ¶ 32).  "Homies" are two- to three-
inch tall plastic figurines created by artist David Gonzales that
depict Latinos and "urban figures of other races" (Joe Piasecki,
The New Americana, Pasadena Weekly, Jan. 3, 2008 (Ex. 20 to
Rogatnick Decl.)).

        Plaintiff also asserts that another employee displayed
a poster that she found offensive of African-American rap artist
50-Cent pointing a gun (Pl. Dep. 124-25; Pl. Decl. ¶ 34).
Plaintiff contends that this was a "demeaning thug mentality
poster" because the rapper is "known for his involvement in drugs
and [his] past criminal record" (Pl. Decl. ¶ 34).  Plaintiff
testified, however, that the poster was taken down shortly after
another employee complained about it (Pl. Dep. 129-30).

        Finally, plaintiff states that "Ethnic hair care
products geared toward minorities were used as joke props by some
of the white male employees" (Pl. Decl. ¶ 33).  Plaintiff has not
provided any further information regarding this allegation.

Plaintiff could not recall at her deposition when or for how long any of the foregoing materials were displayed (Pl. Dep. 118-24, 129-30, 134-35; Pl. Rule 56.1 Stmt. ¶¶ 41, 46, 47).

F.   Allegedly Retaliatory
     Discipline Based
     on Plaintiff's
     Late Arrivals to Work

At her deposition, plaintiff admitted that she was chronically late for work (Pl. Dep. 294-97).  Plaintiff further testified that, as an accommodation, at some point between 2002 and 2005, Hoffman changed plaintiff's start time to 10:00 A.M., the latest start time permitted by the Bank (Pl. Dep. 286-88; Pl. Rule 56.1 Stmt. ¶¶ 68-78).  Plaintiff testified that despite the change she continued to arrive late to work and Hoffman continued to warn plaintiff that her chronic lateness was unacceptable (Pl. Dep. 286-89, 294-99; Pl. Rule 56.1 Stmt. ¶¶ 68-78).  Plaintiff asserts that Hoffman's warnings coincided with an increase in plaintiff's complaints of discrimination in 2005 (Pl. Dep. 294-97).

Plaintiff claims that the warnings she received before June 2006 were all verbal and did not threaten her with any discipline (Pl. Dep. 286-89, 294-99).  Plaintiff asserts that after she made a written complaint on May 23, 2006 asserting

12

numerous discriminatory acts, she received, for the first time, a "final warning" from Hoffman that threatened her with termination (Pl. Dep. 286-89, 295-98). Defendants claim that plaintiff was given a final warning regarding her lateness and threatening her with the possibility of termination in January 2006 -- four months prior to her May 23 letter complaining of discrimination (Pl. Rule 56.1 Stmt. ¶ 73; Rogatnick Decl., Ex. 33).

There is no dispute, however, that plaintiff was not terminated for excessive lateness (Pl. Rule 56.1 Stmt. ¶ 80).

III. <u>Analysis</u>

    A. <u>Legal Standards</u>

        1. <u>Summary Judgment</u>

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party . . . is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). To grant the motion, the court must determine that there is no genuine issue of material fact to be tried. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue derives from the "evidence [being] such that a

reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S. Ct. 2505. The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual argument based on "conjecture or surmise," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The Supreme Court teaches that "all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L.Ed.2d 569 (1968); see also Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L.Ed.2d 731 (1999). It is a settled rule that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir 2006) (ellipsis added; brackets in original); accord Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000);[9] Estate of Gustafson ex rel. Reginella v. Target Corp., 819 F.3d 673 (2d Cir. 2016); Cortes v. MTA N.Y.C. Transit, 802 F.3d 226, 230 (2d Cir. 2015); Deep Woods Holdings, L.L.C. v. Sav. Deposit Ins. Fund of Republic of Turkey, 745 F.3d 619, 622-23 (2d Cir. 2014); Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011).

---

[9]Although the Court in Reeves was reviewing the denial of a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50, the same standards apply to a motion for summary judgment pursuant to Fed.R.Civ.P. 56.  Reeves v. Sanderson Plumbing Prods., Inc., supra, 530 U.S. at 151-52.

"Material facts are those which 'might affect the out-
come of the suit under the governing law' . . ." Coppola v. Bear
Stearns & Co., Inc., 499 F.3d 144, 148 (2d Cir. 2007), quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
"'[I]n ruling on a motion for summary judgment, a judge must ask
himself not whether he thinks the evidence unmistakably favors
one side or the other but whether a fair-minded jury could return
a verdict for the [non-movant] on the evidence presented[.]'"
Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir.
2007) (brackets in original), quoting Readco, Inc. v. Marine
Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

Entry of summary judgment is appropriate "against a
party who fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial."
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "In such a
situation, there can be 'no genuine issue as to any material
fact,' since a complete failure of proof concerning an essential
element of the nonmoving party's case necessarily renders all
other facts immaterial."  Celotex Corp. v. Catrett, supra, 477
U.S. at 322-23, quoting Fed.R.Civ.P. 56.

The Court of Appeals has "repeatedly expressed the need
for caution about granting summary judgment to an employer in a

discrimination case where, as here, the merits turn on a dispute as to the employer's intent." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir 2008), citing Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997), Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994) and Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985); accord Figueroa v. Johnson, -- F. App'x --, No. 15-1948-cv, 2016 WL 2641016 (2d Cir. May 10, 2016) (summary order); Tolbert v. Smith, 790 F.3d 427, 434 (2d Cir. 2015); Desir v. City of New York, 453 F. App'x 30, 33 (2d Cir. 2011) (summary order).  "Where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, so that 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'"  Holcomb v. Iona Coll., supra, 521 F.3d at 137, quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, supra, 22 F.3d at 1224.  Nonetheless,

> [s]ummary judgment remains appropriate in discrimina-tion cases, as "the salutary purposes of summary judg-ment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to . . . other areas of litigation." Weinstock, 224 F.3d at 41 (internal quotation marks omitted); see also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that sum-mary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

16

<u>Desir v. City of New York</u>, <u>supra</u>, 453 F. App'x at 33 (alteration in original); <u>see</u> <u>also</u> <u>Holcomb v. Iona Coll.</u>, <u>supra</u>, 521 F.3d at 137 ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").

> 2. Overview of
>    <u>Discrimination Law</u>

> a. <u>Title VII and NYSHRL</u>

Claims of discrimination under Title VII and the NYSHRL that result in an identifiable adverse employment action are properly analyzed under the now familiar framework first set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). <u>Simmons v. Akin Gump Strauss Hauer & Feld, LLP</u>, 508 F. App'x 10, 12 (2d Cir. 2013) (summary order). Under the <u>McDonnell Douglas</u> framework, discrimination claims are assessed through a three-part, burden-shifting analysis:

> [T]he initial burden rests with the plaintiff to estab-
> lish a <u>prima</u> <u>facie</u> case of discrimination. "A plain-
> tiff's establishment of a <u>prima</u> <u>facie</u> case gives rise
> to a presumption of unlawful discrimination" that then
> "shifts the burden of production to the defendant, who
> must proffer a 'legitimate, nondiscriminatory reason'
> for the challenged employment action." <u>Woodman v.</u>
> <u>WWOR-TV, Inc.</u>, 411 F.3d [69, 76 (2d Cir. 2005)] (<u>quot-</u>
> <u>ing</u> <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d
> 87, 91 (2d Cir. 2001)). If the defendant satisfies
> this burden, "the presumption of discrimination drops

out" of the case, and the plaintiff must prove that a
defendant's proffered reasons were not the true reasons
for its actions but a pretext for discrimination. Roge
v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir.
2001).

Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005).

In order to establish a prima facie case of discrimina-
tion, a plaintiff must offer evidence that is at least sufficient
to give rise to an issue of fact as to four elements: (1) she is
a member of a protected class; (2) she was qualified for the
position; (3) she was subjected to an adverse employment action
and (4) the adverse employment action occurred under circum-
stances giving rise to an inference of discrimination on the
basis of her membership in the protected class. Dawson v. Bumble
& Bumble, 398 F.3d 211, 216 (2d Cir. 2005) (citations omitted);
accord Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004);
Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir.
2002). "A plaintiff suffers an adverse employment action if she
endures a 'materially adverse change' in the terms and conditions
of employment." Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.,
483 F. App'x 660, 662 (2d Cir. 2012) (summary order), quoting
Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

"[I]ndividuals are not subject to liability under Title
VII." Sassaman v. Gamache, 566 F.3d 307, 315-16 (2d Cir. 2009),
quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 221 (2d Cir.

18

2004)); see Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir.
2012) ("Title VII does not impose liability on individuals");
Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (Title VII
claims against individual defendants were "properly dismissed . .
. because individuals are not subject to liability under Title
VII").  "Unlike Title VII, [NYSHRL] § 296(6) has been construed
by the Second Circuit to impose liability on an individual
'defendant who actually participates in the conduct giving rise
to a discrimination claim.'"  Lewis v. Triborough Bridge & Tunnel
Auth., 77 F. Supp. 2d 376, 380 (S.D.N.Y. 1999) (Leisure, D.J.)
(emphasis added in original, citing Tomka v. Seiler Corp., 66
F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds,
Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); see also
Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107
n.10 (2d Cir. 2011).

  b.  NYCHRL

   The NYCHRL makes it "an unlawful discriminatory prac-
tice" for an employer, "because of" a protected characteristic,
such as race or gender, "to refuse to hire or employ or to bar or
to discharge from employment such person or to discriminate
against such person in compensation or in terms conditions or
privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a).

The NYCHRL, as amended in 2005, requires "courts [to] analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citations and internal quotation marks omitted) ("Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards."); see also Velazco v. Columbus Citizens Found., 778 F.3d 409, 410 (2d Cir. 2015) (per curiam) ("district courts who exercise pendent jurisdiction over NYCHRL claims are required by the Local Civil Rights Restoration Act of 2005 . . . , N.Y.C. Local L. No. 85, to analyze those claims under a different standard from that applicable to parallel federal and state law claims.").

Under the NYCHRL, in order to survive summary judgment, a plaintiff need only adduce evidence "that she has been treated less well than other employees because of her [protected status]." Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 76, 872 N.Y.S.2d 27, 39 (1st Dep't 2009), leave to appeal denied, 13 N.Y.3d 702, 914 N.E.2d 365, 885 N.Y.S.2d 716 (2009) (Table); see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., supra,

20

715 F.3d at 110 n.8; Weber v. City of New York, 973 F. Supp. 2d 227, 262 (E.D.N.Y. 2013); Gelin v. City of New York, 10-cv-5592 (CBA)(VVP), 2013 WL 2298979 at *12 (E.D.N.Y. May 24, 2013); Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ., 866 F. Supp. 2d 147, 160-61 (E.D.N.Y. 2011).

"The employer may present evidence of its legitimate non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that discrimination played no role." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., supra, 715 F.3d at 110 n.8 (citation omitted); see also Bennett v. Health Mgt. Sys., Inc., 92 A.D.3d 29, 45, 936 N.Y.S.2d 112, 124 (1st Dep't 2011), leave to appeal denied, 18 N.Y.3d 811, 968 N.E.2d 1001, 945 N.Y.S.2d 645 (2012) (Table).

Notwithstanding these more liberal standards, when warranted, "New York courts continue to grant and affirm the granting of summary judgment dismissing NYCHRL claims." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., supra, 715 F.3d at 112, citing Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 128, 946 N.Y.S.2d 27, 41-42 (1st Dep't 2012), Bennett v. Health Mgt. Sys., Inc., supra, 936 N.Y.S.2d at 123-25 and Williams v. N.Y.C. Hous. Auth., supra, 61 A.D.3d at 81, 872 N.Y.S.2d at 42.

Like the NYSHRL, the NYCHRL provides that an individual who actually participates in the conduct giving rise to the claim can be liable.  See Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) (Oetken, D.J.); Banks v. Corr. Servs. Corp., 475 F. Supp.2d 189, 200 (E.D.N.Y. 2007).

### 3.  Salary-Related Disparate Treatment

#### a.  Equal Pay Act

"To prove discrimination under the Equal Pay Act, a plaintiff must show that: 'i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions.'"  Lavin-McEleney v. Marist Coll., 239 F.3d 476, 480 (2d Cir. 2001) (citation omitted).

#### b.  Denial of Promotions and Career Development

##### i.  Title VII and NYSHRL

Plaintiff's federal and state discrimination claims based on an alleged denial of promotions and career opportunities

22

are analyzed under the same standards.   <u>Mandell v. County of</u>

<u>Suffolk</u>, 316 F.3d 368, 377-79 (2d Cir. 2003).

> To establish a claim of discriminatory failure to
> promote within the Second Circuit, a plaintiff must
> show:  (1) that [she] is a member of a protected class;
> (2) that [she] applied for a position for which [she]
> was qualified; (3) that [she] was rejected for the
> position under circumstances suggesting an inference of
> discrimination; and (4) that the employer kept the
> position open and continued to seek applicants.

<u>Manessis v. N.Y.C. Dep't of Transp.</u>, 02 Civ. 359 (SAS), 2003 WL

289969 at *9 (S.D.N.Y. Feb. 10, 2003) (Scheindlin, D.J.), <u>aff'd</u>,

86 F. App'x 464, 465 (2d Cir. 2004) (summary order), <u>citing</u> <u>Brown</u>

<u>v. Coach Stores, Inc.</u>, 163 F.3d 706, 710 (2d Cir. 1998).

Where a plaintiff alleges discrimination by "denial of

professional training opportunities," this "may constitute an

adverse employment action, but only where an employee can show

'material harm' from the denial, 'such as a failure to promote or

a loss of career advancement opportunities.'"   <u>Trachtenberg v.</u>

<u>Dep't of Educ. of N.Y.C.</u>, 937 F. Supp. 2d 460, 468 (S.D.N.Y.

2013) (Engelmayer, D.J.), <u>quoting</u> <u>Hill v. Rayboy-Brauestein</u>, 467

F. Supp. 2d 336, 352 (S.D.N.Y. 2006) (Karas, D.J.); <u>see</u> <u>also</u>

<u>Beyer v. County of Nassau</u>, 524 F.3d 160, 165 (2d Cir. 2008) (a

plaintiff may suffer an adverse action by being denied a trans-

fer, if she adduces evidence "to permit a reasonable factfinder

to conclude that the sought for position is materially more

advantageous than the employee's current position" such as by
"training opportunity, job security, or some other objective
indicator of desirability.").

### ii. NYCHRL

The NYCHRL has less stringent requirements with respect
to failure-to-promote and denial-of-career-opportunities claims,
but still requires a showing of differential treatment based on a
protected characteristic.  "[T]he NYCHRL expands the definition
of discrimination beyond 'conduct [that] is "tangible" (like
hiring or firing), a requirement embodied in the federal require-
ment that an action be 'materially adverse' to be actionable, to
encompass all allegations that a plaintiff is treated differently
based on protected status."  Kerman-Mastour v. Fin. Indus.
Regulatory Auth., Inc., 814 F. Supp. 2d 355, 366 (S.D.N.Y. 2011)
(Holwell, D.J.), quoting Williams v. N.Y.C. Hous. Auth., supra,
61 A.D.3d at 78-79, 872 N.Y.S.2d at 40.  Nevertheless, a plain-
tiff must still offer evidence that discriminatory animus played
a role in bringing about the challenged conduct.  Kerman-Mastour
v. Fin. Indus. Regulatory Auth., Inc., supra, 814 F. Supp. 2d at
369 (plaintiff's NYCHRL discrimination claim failed to survive
summary judgment because plaintiff only offered "her own ipse

24

dixit" to support her contention that her employer discriminated against her by not recommending her for a promotion).

      c.  Disparate Treatment
          Based on Unequal Pay

       i.  Title VII and NYSHRL

Plaintiffs' claims under Title VII and the NYSHRL alleging disparate treatment based on unequal pay are also evaluated under the same analytical framework.  See Kaye v. Storm King School, 11 Civ. 3369 (VB), 2015 WL 5460107 at *16 (S.D.N.Y. June 8, 2015) (Bricetti, D.J.), citing Rojas v. Roman Catholic Diocese of Rochester, supra, 660 F.3d at 107 n.10.  To establish a prima facie case of disparate treatment based on pay discrimination, a plaintiff must show that:

> (1) she was a member of a protected class; (2) she was qualified for the job in question; (3) she was paid less than members outside of the protected class for the same work; and (4) the employer's decision to pay the plaintiff less occurred under circumstances that give rise to an inference of discrimination.

Lawless v. TWC Media Sols., Inc., 487 F. App'x 613, 617-18 (2d Cir. 2012) (summary order), citing Belfi v. Prendergast, 191 F.3d 129, 140 (2d Cir. 1999); see also McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001); Cruse v. G&J USA Pub., 96 F. Supp. 2d 320, 326 (S.D.N.Y. 2000) (Scheindlin, D.J.).  The standard is

25

essentially the same standard that applies under the Equal Pay
Act except that intentional discrimination is required and Title
VII and the NYSHRL also prohibit discrimination on the basis of
protected characteristics other than sex, including race and
color.  Hughes v. Xerox Corp., 37 F. Supp. 3d 629, 644 (W.D.N.Y.
2014).  Under this standard, "[a] plaintiff makes out a prima
facie case when she produces evidence to show that a similarly
situated employee outside of the relevant protected group re-
ceived better treatment."  Lawless v. TWC Media Sols., Inc.,
supra, 487 F. App'x at 618, citing McGuinness v. Lincoln Hall,
supra, 263 F.3d at 53; accord Farias v. Instructional Sys., Inc.,
259 F.3d 91, 98 (2d Cir. 2001); James v. New York Racing Ass'n,
233 F.3d 149, 154 (2d Cir. 2000) (applying standard in claim for
discriminatory termination under Age Discrimination in Employment
Act (ADEA)); Paul v. Wyeth Pharm., Inc., 07 Civ. 950 (CLB), 2008
WL 552554 at *10 (S.D.N.Y. Feb. 28, 2008) (Brieant, D.J.), aff'd,
326 F. App'x 18 (2d Cir. 2009) (summary order); see, e.g.,
McGuinness v. Lincoln Hall, supra, 263 F.3d at 53-54 (providing
substantially different severance packages to similarly situated
employees of different race and sex sufficient to support "mini-
mal inference that the difference of treatment may be attribut-
able to discrimination" for prima facie case).

Among the factors to be considered in determining
whether employees are similarly situated are their
"specific work duties, education, seniority, and per-
formance history." [Simpson v. Metro North Commuter
R.R., 04 Civ. 2565 (PAC), 2006 WL 2056366 at *7
(S.D.N.Y. July 20, 2006) (Crotty, D.J.)].  For employ-
ees to be considered similarly situated, "their circum-
stances need not be identical, but there should be a
reasonably close resemblance of facts and circumstances
. . . .  What is key is that they be similar in signif-
icant respects."  Lizardo v. Denny's, Inc., 270 F.3d
94, 101 (2d Cir. 2001) (citation omitted) (applying
this standard to a Section 1981 claim).

Trotman v. CBS Radio Inc., 06 Civ. 3389 (FM), 2007 WL 2827803 at

*9 (S.D.N.Y. Sept. 27, 2007) (Maas, M.J.); accord Fox v. State

University of New York, 686 F. Supp. 2d 225, 232 (E.D.N.Y. 2010).

"A plaintiff need not demonstrate that her job is identical to a

higher paid position, but only must show that the two positions

are 'substantially equal.'"  Tomka v. Seiler Corp., supra, 66

F.3d at 1310 (citation omitted).  "However, jobs which are

'merely comparable' are insufficient to satisfy a plaintiff's

prima facie burden."  Tomka v. Seiler Corp., supra, 66 F.3d at

1310 (citation omitted).

     If a plaintiff succeeds in establishing a prima facie

case, the employer bears the burden of articulating a non-dis-

criminatory reason for the unequal treatment.  Lawless v. TWC

Media Sols., Inc., supra, 487 F. App'x at 616; Kaye v. Storm King

School, supra, 2015 WL 5460107 at *7 (citations omitted).  If the

employer meets that burden, however,

27

the plaintiff bears the ultimate burden of showing that
the defendant intentionally discriminated against the
plaintiff.  Howley v. Town of Stratford, 217 F.3d 141,
150 (2d Cir. 2000).  The "plaintiff's prima facie case,
combined with sufficient evidence to find that the
employer's asserted justification is false, may permit
the trier of fact to conclude that the employer unlaw-
fully discriminated."  Windham v. Time Warner, Inc.,
275 F.3d 179, 187 (2d Cir. 2001) (citation omitted).
An employer that has put forth nondiscriminatory rea-
sons for its employment action is entitled to summary
judgment "unless the plaintiff can point to evidence
that reasonably supports a finding of prohibited dis-
crimination."  James v. N.Y. Racing Ass'n, 233 F.3d
149, 154 (2d Cir. 2000).

Medina v. N.Y.C. Dep't of Parks & Recreation, 01 Civ. 7847 (DLC)

2002 WL 31812681 at *5 (S.D.N.Y. Dec. 12, 2002) (Cote, D.J.).


### ii. NYCHRL


The NYCHRL also prohibits employers from discriminating

with respect to compensation on the basis of race or gender.  See

N.Y. City Admin. Code §§ 8-107(1)(a).  As noted above, plain-

tiff's NYCHRL claims must be analyzed separately from her federal

and state law claims and to survive summary judgment, plaintiff

need only show that "she has been treated less well than other

employees" at least in part because of her race or sex.  Williams

v. N.Y.C. Hous. Auth., supra, 61 A.D.3d at 78, 872 N.Y.S.2d at

39; see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,

supra, 715 F.3d at 110 n.8.  "The employer may present evidence

of its legitimate, non-discriminatory motives to show the conduct

28

was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record established as a matter of law that discrimination played <u>no</u> role in its actions." <u>Mihalik v. Credit Agricole Cheuvreux North America, Inc.</u>, <u>supra</u>, 715 F.3d at 110 n.8 (internal quotation marks, alteration and citation omitted; emphasis in original); <u>accord</u> <u>Gorman v. Covidien, LLC</u>, 13 Civ. 6486 (KPF), 2015 WL 7308659 at *12 (S.D.N.Y. Nov. 19, 2015) (Failla, D.J.); <u>E.E.O.C. v. Bloomberg L.P.</u>, 967 F. Supp. 2d 816, 836 (S.D.N.Y. 2013) (Preska, D.J.).

### 4.  Hostile Work Environment

#### a.  Title VII and NYSHRL

"Hostile work environment claims under Title VII and the NYSHRL are governed by the same standard." <u>Tolbert v. Smith</u>, <u>supra</u>, 790 F.3d at 439.  "An employee seeking to bring a hostile work environment claim must demonstrate that:  (1) she is a member of a protected class; (2) she suffered unwelcome harassment; (3) she was harassed because of her membership in a protected class; and (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment."  <u>Miller v. McHugh</u>, 814 F. Supp. 2d 299, 314 (S.D.N.Y. 2011) (Scheindlin, D.J.); <u>see also</u> <u>Pa. State</u>

29

Police v. Suders, 542 U.S. 129, 133-34 (2004); Clark Cnty. Sch.
Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (per curiam);
Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007); Demoret v.
Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006); Schiano v. Quality
Payroll Sys., Inc., 445 F.3d 597, 605 (2d Cir. 2006); Petrosino
v. Bell Atl., 385 F.3d 210, 221-22 (2d Cir. 2004); Feingold v.
New York, 366 F.3d 138, 149-50 (2d Cir. 2004); Hayut v. State
Univ. of N.Y., 352 F.3d 733, 744-45 (2d Cir. 2003); Alfano v.
Costello, 294 F.3d 365, 373-74 (2d Cir. 2002); Whidbee v.
Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir.
2000).

A hostile environment claim requires offensive conduct
that is severe and pervasive; the offensive conduct need not,
however, be intolerable or unendurable.

> While the standard for establishing a hostile work
> environment is high, we have repeatedly cautioned
> against setting the bar too high, noting that
> "[w]hile a mild, isolated incident does not make a
> work environment hostile, the test is whether 'the
> harassment is of such quality or quantity that a
> reasonable employee would find the conditions of
> her employment altered for the worse.'" (alter-
> ation and emphasis in the original).
>
> Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)
> (quoting Whidbee v. Garzarelli Food Specialties, Inc.,
> 223 F.3d 62, 70 (2d Cir. 2000)).  "The environment need
> not be 'unendurable' or 'intolerable.'"  Id.  In brief,
> "the fact that the law requires harassment to be severe
> or pervasive before it can be actionable does not mean
> that employers are free from liability in all but the

> most egregious cases." <u>Id</u>. (quoting <u>Whidbee</u>, 223 F.3d
> at 70 (internal quotation marks omitted)).

<u>Feingold v. New York</u>, <u>supra</u>, 366 F.3d at 150.

In determining whether the level of workplace miscon-
duct constitutes an actionable "hostile environment," no single
factor is determinative; rather, the court must consider the
totality of the circumstances. <u>Faragher v. City of Boca Raton</u>,
524 U.S. 775, 787-88 (1998); <u>Raniola v. Bratton</u>, <u>supra</u>, 29 243
F.3d at 617; <u>see also</u> <u>Hayut v. State Univ. of N.Y.</u>, <u>supra</u>, 352
F.3d at 746 (hostile environment claims are "fact-specific and
circumstance-driven").  "Factors that a court might consider in
assessing the totality of the circumstances include:  (1) the
frequency of the discriminatory conduct; (2) its severity; (3)
whether it is threatening and humiliating, or a mere offensive
utterance; and (4) 'whether it unreasonably interferes with the
performance of an employee's work performance.'"  <u>Patane v.
Clark</u>, <u>supra</u>, 508 F.3d at 113, <u>quoting</u> <u>Harris v. Forklift Sys.,
Inc.</u>, 510 U.S. 17, 23 (1993).

> Simple teasing, offhand comments, or isolated incidents
> of offensive conduct (unless extremely serious) will
> not support a claim of discriminatory harassment.  <u>See
> id</u>.; <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 75 (2d
> Cir. 2001).  To defeat [defendant's] motion for summary
> judgment, [plaintiff] must adduce evidence sufficient
> to permit a reasonable jury to conclude that [the]
> workplace was "permeated with 'discriminatory intimida-
> tion, ridicule, and insult,' that [was] 'sufficiently
> severe or pervasive to alter the conditions of [her]

31

employment.'" <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S.
at 21, 114 S.Ct. 367 (<u>quoting</u>  <u>Meritor Sav. Bank, FSB
v. Vinson</u>, 477 U.S. at 65, 67, 106 S.Ct. 2399); <u>accord</u>
<u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 570 (2d Cir.
2000).

<u>Petrosino v. Bell Atl.</u>, 385 F.3d 210, 223-24 (2d Cir. 2004).


       b.  <u>NYCHRL</u>


The NYCHRL does not differentiate between discrimina-
tion and hostile environment claims -- both are governed by
N.Y.C. Admin. Code § 8-107(1)(a).  <u>See</u> <u>Tse v. New York Univ.</u>, 10
Civ. 7207(DAB), 2013 WL 5288848 at *15 (S.D.N.Y. Sept. 19, 2013)
(Batts, D.J.); <u>Sotomayor v. City of New York</u>, 862 F. Supp. 2d
226, 261 (E.D.N.Y. 2012), <u>aff'd</u>, 713 F.3d 163 (2d Cir. 2013) (<u>per
curiam</u>).

> To state a hostile work environment claim under the
> NYCHRL, a plaintiff must simply allege facts tending to
> show they were subject to "unwanted gender-based [or
> race-based] conduct." <u>Williams v. NYCHA</u>, 872 N.Y.S.2d
> 27, 38 (App. Div. 1st Dep't 2009).  Significantly, the
> NYCHRL imposes liability for harassing conduct even if
> that conduct "does not qualify as 'severe or perva-
> sive,' and questions of 'severity' and 'pervasiveness'"
> go only to the question of damages, not liability.
> <u>Bermudez v. City of N.Y.</u>, 783 F. Supp. 2d 560, 579
> (S.D.N.Y. 2011).  Nevertheless, even under the NYCHRL,
> "petty, slight, or trivial inconvenience[s] are not
> actionable." <u>Kumanga v. N.Y.C. Sch. Constr. Auth.</u>, 910
> N.Y.S.2d 405, 2010 WL 1444513, at *14 (Sup. Ct. Apr. 2,
> 2010) (unpublished table opinion) (internal quotation
> marks omitted); <u>see also</u> <u>Williams</u>, 872 N.Y.S.2d at 41.

Tulino v. City of New York, 15 Civ. 7106 (JMF), 2016 WL 2967847 at *4 (S.D.N.Y. May 19, 2016) (Furman, D.J.); see also Whitley v. Montefiore Med. Grp., 13 Civ. 4126 (LTS), 2016 WL 1267788 at *9 (S.D.N.Y. Mar. 30, 2016) (Swain, D.J.) ("Petty, slight or trivial inconveniences . . . are not actionable [under the NYCHRL] . . . . While the standard is less severe, the NYCHRL is not meant to operate as a general civility code." (inner quotation marks and citations omitted)); Nieblas-Love v. N.Y.C. Hous. Auth., 14 Civ. 5444 (JMF), 2016 WL 796845 at *5 (S.D.N.Y. Feb. 26, 2016) (Furman, D.J.) (to prove a hostile environment claim under the NYCHRL, a plaintiff "need only put forward evidence of 'unequal treatment based upon membership in a protected class.'"), quoting Fattoruso v. Hilton Grand Vacations Co., 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012) (Forrest, D.J.), aff'd, 525 F. App'x 26, (2d Cir. 2013) (summary order).  Defendants "can still avoid liability [under NYCHRL] if they prove that the conduct complained of consists of nothing more than what a reasonable victim of dis- crimination would consider 'petty slights and trivial inconve- niences.'"  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., supra, 715 F.3d at 111, quoting Williams v. N.Y.C. Hous. Auth., supra, 61 A.D.3d at 80, 872 N.Y.S.2d at 41.

5.   Retaliation

   a.   Title VII and NYSHRL

"The burden-shifting framework laid out in [McDonnell
Douglas], governs retaliation claims under both Title VII and the
NYSHRL." Summa v. Hofstra Univ., supra, 708 F.3d at 125.  To
establish a prima facie case of retaliation, a plaintiff must
demonstrate that:  (1) she engaged in protected activity; (2) the
employer was aware of this activity; (3) the employer took
adverse action against her and (4) a causal connection exists
between the protected activity and the adverse action, i.e., that
a retaliatory motive played a part in the adverse employment
action.  Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir.
2012); Vito v. Bausch & Lomb Inc., 403 F. App'x 593, 597 (2d Cir.
2010); Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 177 (2d Cir.
2006); Constance v. Pepsi Bottling Co. of N.Y., 03-CV-5009
(CBA)(MDG), 2007 WL 2460688 at *34 (E.D.N.Y. Aug. 24, 2007).  "A
plaintiff seeking to demonstrate that [s]he engaged in protected
activity need not show that the behavior [s]he opposed in fact
violated Title VII; [s]he must, however, show that [s]he 'pos-
sessed a good faith, reasonable belief,' . . . that the em-
ployer's conduct qualified as an 'unlawful employment practice.'"
Cooper v. New York State Dep't of Labor, 819 F.3d 678, 680-81 (2d

34

Cir. 2016), quoting Summa v. Hofstra Univ., supra, 708 F.3d at 126.

Once a plaintiff demonstrates a prima facie case of retaliation,

> the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision.  If a defendant meets this burden, "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation."

Treglia v. Town of Manlius, 313 F.3d 713, 721 (2d Cir. 2002) (internal citation omitted);[10] accord Hamza v. Saks Inc., 533 F. App'x 34 (2d Cir. 2013) (summary order); Noel v. BNY-Mellon Corp., 514 F. App'x 9, 11 (2d Cir. 2013)(summary order); Porter v. Potter, 366 F. App'x 195, 196 (2d Cir. 2010) (summary order); Weiss v. Morgan Stanley Inv. Mgt., 345 F. App'x 713, 714 (2d Cir. 2009) (summary order).  A defendant can meet its burden at this stage by pointing out that plaintiff was disciplined because she engaged in conduct that violated a workplace policy.  See, e.g., Grasso v. EMA Design Automation, Inc., 618 F. App'x 36, 37 (2d Cir. 2015) (summary order) ("refusal to appear for a job or

---

[10]Although Treglia v. Town of Manlius involved a claim for retaliation under the Americans with Disabilities Act ("ADA"), claims for retaliation under Title VII and the ADA are analyzed under the same burden-shifting framework.  Treglia v. Town of Manlius, supra, 313 F.3d at 719.

perform job duties is a legitimate, nondiscriminatory reason for adverse employment action" (citation omitted)), petition for cert. filed, (No. 15-8746, Jan 25, 2016); Spiess v. Xerox Corp., 481 F. App'x 700, 701 (2d Cir. 2012) (summary order) (in discrimination case, the employer "articulated a legitimate, nondiscriminatory reason for the [employee's] termination -- that he violated [the employer's] internet and email use policy and that his violations were more egregious than those of his co-workers, who were not discharged."); Eustache v. Home Depot U.S.A., Inc., 13-CV-42L (SJF)(AKT), 2014 WL 4374588 at *28-*29 (E.D.N.Y. Sept. 2, 2014) (defendant's proffer of "legitimate business" reasons for discipline and termination of plaintiff satisfied burden at the second stage), aff'd, 621 F. App'x 86 (2d Cir. 2015) (summary order); Martinez v. Connecticut, State Lib., 817 F. Supp. 2d 28, 47 (D. Conn. 2011) (assertion that "decision to discipline [plaintiff] was the result a formal investigation which concluded that [plaintiff] had engaged in conduct that violated" a workplace policy satisfied the defendant's burden to proffer a legitimate non-retaliatory reason).

"If the employer satisfies [its] burden [of articulating a legitimate, non-retaliatory reason]," then the plaintiff must demonstrate that "the proffered reason is pretext for retaliation and that the plaintiff's protected activity was a

36

but-for cause of the alleged adverse action by the employer."
Kleehammer v. Monroe County, 583 F. App'x 18, 20-21 (2d Cir.
2014) (summary order) (internal quotation marks and citation
omitted)[11]; Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173
(2d Cir. 2005) (Once an employer proffers a legitimate, non-
retaliatory reason, "the presumption of retaliation dissipates
and the employee must show that retaliation was a substantial
reason for the adverse employment action."); accord Ya-Chen Chen
v. City Univ. of New York, 805 F.3d 59, 70 (2d Cir. 2015).  At
this stage, a plaintiff may rely on evidence in support of her
prima facie case as well as "other evidence such as inconsistent
employer explanations, to defeat summary judgment . . . ."  Zann
Kwan v. Andalex Group LLC, 737 F.3d 834, 847 (2d Cir. 2013).

   b.  NYCHRL

      The reach of the anti-retaliation provision of the
NYCHRL is broader -- "retaliation 'in any manner' is prohibited,"
and the retaliation "'need not result in an ultimate action with
respect to employment . . . or in a materially adverse change in

_____

   [11]Whether the but-for-causation standard also applies to
NYSHRL retaliation claims is an open question.  See Kleehammer v.
Monroe County, supra, 583 F. App'x at 21.  It is not necessary to
reach this issue, however, because, as discussed below, plaintiff
has not provided evidence of pretext.

the terms and conditions of employment.'"   <u>Fincher v. Depository
Trust & Clearing Corp.</u>, 604 F.3d 712, 723 (2d Cir. 2010), <u>quoting</u>
N.Y.C. Admin. Code § 8-107(7).

> The proper inquiry under the CHRL is whether a jury
> could "reasonably conclude from the evidence that [the
> complained-of] conduct [by the employer] was, in the
> words of the [CHRL], reasonably likely to deter a
> person from engaging in protected activity," without
> taking account of whether the employer's conduct was
> sufficiently deterrent so as to be "material[ ]."
> <u>Williams</u>, 61 A.D.3d at 71, 872 N.Y.S.2d at 34 (internal
> quotation marks omitted).

<u>Fincher v. Depository Trust & Clearing Corp.</u>, <u>supra</u>, 604 F.3d at
723 (alterations in original); <u>see also</u> <u>Mihalik v. Credit
Agricole Cheuvreux N. Am., Inc.</u>, <u>supra</u>, 715 F.3d at 112.   "[A]n
employer's continuation of a course of conduct that had begun
before the employee complained does not constitute retaliation
because, in that situation, there is no causal connection between
the employee's protected activity and the employer's challenged
conduct."   <u>Melman v. Montefiore Med. Ctr.</u>, <u>supra</u>, 98 A.D.3d at
129, 946 N.Y.S.2d at 42; <u>accord</u> <u>Ya-Chen Chen v. City Univ. of New
York</u>, <u>supra</u>, 805 F.3d at 77.

38

B.   Analysis of
     Plaintiff's Claims

   1.   Overview

     The complaint asserts twelve claims.  Most of the
claims involve common elements or are based on common factual
allegations.  For example the second, seventh and eleventh claims
allege retaliation under Title VII, the NYSHRL and the NYCHRL,
respectively; all three of the claims are based on identical
factual allegations.  Accordingly, with one exception, the claims
can be analyzed together and fall into three general categories:
(1) disparate treatment with respect to promotions and career
opportunities as well as pay discrimination in violation of Title
VII, the NYSHRL, the NYCHRL and the Equal Pay Act; (2) sexual
harassment and hostile work environment in violation of Title
VII, the NYSHRL and the NYCHRL and (3) retaliation in violation
of Title VII, the NYSHRL and the NYCHRL.[12]

---

     [12]Defendants argue that plaintiff's NYCHRL and NYSHRL claims
should be summarily dismissed because she does not specifically
address them in her opposition brief (Reply Mem. in Further
Support of Def. Mot. For Summary Judgment, dated March 3, 2016
("Def. Reply Mem."), at 4 n.2).  Defendants are incorrect.
"[T]the failure to oppose a motion for summary judgment alone
does not justify the granting of summary judgment."  Vermont
Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d
Cir. 2004).  Rather, "the district court must still assess
whether the moving party has fulfilled its burden of demonstrat-
                                                    (continued...)

The one exception to the foregoing are plaintiff's claims against the individual defendants.  Because Title VII claims can be brought only against an employer, but not supervisors, see pages 18-19, above, all of plaintiff's Title VII claims against Hoffman, McCarthy, Parker, Lynch, Bodnar and Desiderio are dismissed.

      2.   Unequal Terms and
           Conditions of Employment

       a.  Title VII and NYSHRL Claims

Plaintiff claims that she suffered discrimination because she (1) was "denied Promotional Increases and Job Title changes," (Pl. Decl. ¶ 16), (2) received unequal pay and (3) was placed on longer salary review cycles than her counterparts (Pl. Decl. ¶¶ 9-10, 14-15; Mem. In Opp. to Def. Motion for Summary Judgment, dated Jan. 28, 2015 ("Pl. Mem.") at 19-21).

To the extent these claims are based on a failure to promote and/or denial of career opportunities defendants are entitled to summary judgment because plaintiff has not offered any evidence that she sought and was denied any promotions,

---

     [12](...continued)
ing that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., supra, 373 F.3d at 244.

transfers, training or other career opportunities.  Plaintiff
testified that she did not apply for any positions either for-
mally or informally and that her only basis for this claim is
that she was paid less than her counterparts (Pl. Dep. 223, 257-
58).[13]  Plaintiff's salary-related complaints, however, are
distinct from a failure-to-promote claim.  Thus, plaintiff's
discrimination claims under Title VII and the NYSHRL based on a
failure to promote or denial of career advancement opportunities
is unsupported by any evidence and summary judgment is appropri-
ate with respect to this aspect of the complaint.

The current record demonstrates, however, that there is
an issue of fact precluding summary judgment on plaintiff's race-
based federal and state pay discrimination claims; there is
evidence that similarly situated white employees received higher
salaries than plaintiff and were reviewed for raises more often
than plaintiff.

Defendants' sole basis for seeking summary judgment
dismissing plaintiff's unequal pay claims is their contention

---

[13]Plaintiff states that although "she did not apply for
other positions other than the ones held[,] she [was] denied . .
. equal job opportunities . . . although Plaintiff's title
changed to Office manager, her compensation did not change.
Conversely, Caucasian office managers were earning significantly
more money than Plaintiff even though they had the same title and
same or fewer responsibilities" (Pl. Mem. at 19, citing Pl. Dep.
258-61 & Pl. Decl. ¶¶ 5-10).

that plaintiff's salary was "commensurate" with the salaries of
the other officer managers in the Technology Sector and that
therefore, she was not treated differently (Def. Mem. at 5, 21,
23).[14]  Defendants assert that plaintiff's salary and salary
cycle review period were determined by the Bank's compensation
department based on a uniform application of corporate policy and
that all individuals in plaintiff's salary level and position in
the Bank were placed in the 18-month cycle (Pl. Rule 56.1 Stmt.
¶¶ 65-66).  Defendants also rely on the chart they have submitted
in support of their motion which lists ten office managers in the
Technology Sector, including the white office managers plaintiff
asserts earned a higher salary than her,[15] and the "effective
date" of their respective salaries in the 2000 - 2006 time period
(Rogatnick Decl., Ex. 29).  Defendants have not, however, offered

---

[14]Defendants assert that "evidence concerning Office Manager
salaries in the Technology Sector for the period of 2000 - 2006,
compiled by the Bank and produced in discovery, show that Ms.
Rogers' salary was commensurate with the remuneration paid to
other Office Managers, and that she suffered no unequal treat-
ment" (Def. Mem. at 21, citing [Pl.] Rule 56.1 Stmt. ¶¶ 62-64 &
Rogatnick Decl. Ex. 29).  Defendants also argue that "[t]here is
no evidence that race or sex discrimination was a factor in Ms.
Rogers' position and pay at the Bank.  Discrimination means
treating similarly situated employees differently because of a
prohibited criterion. . . [plaintiff] has not offered any evi-
dence to demonstrate that she was being treated differently from
similarly situated Office Managers" (Def. Mem. at 23 (emphasis in
original)).

[15]See Pl. Dep. 257-61, 265-66; Rogatnick Decl. Ex. 28.

any evidence demonstrating that the office managers who received higher salaries or received salary increases more often had credentials that were better or experience greater than plaintiff's. To the contrary, both parties assume that plaintiff was similarly situated to these individuals (Def. Mem. at 21; Def. Reply Mem. at 11; Pl. Rule 56.1 Stmt. ¶¶ 55, 62, <u>citing</u> Rogatnick Decl., Ex. 29).[16]

Assuming, as defendants do, that the other office managers identified in defendants' chart were similarly situated to plaintiff, there is a question of fact as to whether plaintiff's lower salary and longer salary cycle reviews were the result of racial discrimination. The chart shows that on the date plaintiff became an office manager, at least two white office managers and one Latino office manager were paid more than plaintiff (Rogatnick Decl. Ex. 29). It also shows that there

---

[16]Indeed, defendants do not dispute plaintiff's contention that in addition to performing the same duties as other office managers, she had additional responsibilities at a "level and volume" that were more advanced than other office managers (Pl. Decl. ¶¶ 6-9). Further, although defendants state that plaintiff did not have a college degree or any training in technology, they do not assert that these were requirements for the office manager position or that other office managers had these qualifications (Def. Mem. at 22 n.12). Further, although defendants point out that plaintiff "was issued repeated warnings for lateness because she was consistently late for work" they do not assert that this was a factor in plaintiff's salary or salary cycle review schedule (Def. Mem. at 22 n.12).

were white office managers who were reviewed for raises on a
shorter cycle than plaintiff.  For example, the highest paid
office manager, a white female named Jane Doe,[17] was paid more
than $10,000 more than plaintiff at the beginning of 2005
(Rogatnick Decl., Ex. 29; Pl. Dep. 258, 265-66, 281-82).  Doe
also received salary increases more frequently than every 18
months.  For example, in June 2005, Doe received a raise 15
months after her previous raise (Rogatnick Decl., Ex. 29 (showing
that Doe's salary was $66,196 effective July 7, 2004 and $70,196
effective June 12, 2005)).  Another white office manager, Mary
Roe received raises every 12 to 15 months in the 2000 to 2006
time period (see Rogatnick Decl., Ex. 29 (showing that Roe's
salary was increased on June 18, 2001, September 9, 2002, Decem-
ber 14, 2003, March 20, 2005 and June 11, 2006)).  Although
defendants have provided evidence that one African-American
office manager was paid more than most white office managers at
some point, this fact does not warrant summary judgment because
there is no evidence establishing the tenure, education and
experience of these individuals.  Thus, defendants have failed to
demonstrate the absence of a genuine issue of fact concerning

---

[17]As indicated in footnote 1, Jane Doe and Mary Roe are
psudonyms.

plaintiff's Title VII and NYSHRL claims that defendants discrimi-
nated against her by denying her equal pay.

Defendants argue that plaintiff has not put forth any
proof that the individual defendants aided and abetted the pay-
based discrimination to sustain NYSHRL claims against them (Def.
Mem. at 8 n. 3).  Plaintiff does assert that Hoffman and Lynch
actually participated in or aided and abetted the alleged pay
discrimination, (Pl. Mem. at 21; Pl. Decl. ¶¶ 11-15), but does
not make similar claims against the other individual defendants.
Defendants do not contradict plaintiff's assertions.  Therefore,
the motion for summary judgment on the pay discrimination claim
against the individual defendants under the NYSHRL is granted as
to defendants McCarthy, Parker, Bodnar and Desiderio and denied
as to defendants Hoffman and Lynch.

### b.   Equal Pay Act Claim

Plaintiff's claim under the Equal Pay Act, 29 U.S.C. §
206, does not survive summary judgment because plaintiff has not
offered any evidence that she was paid less than similarly
situated male employees.  Plaintiff asserts that "male employees
are being paid more than [her]" (Pl. Mem. at 20; Complaint ¶
150), but does not identify any male employees that were simi-
larly situated to her and paid more than her.  The office manag-

45

ers that plaintiff identifies are all women (Def. Reply Mem. at
12, citing Rogatnick Decl. Ex. 28).  Thus, defendants' motion for
summary judgment is granted on plaintiff's Equal Pay Act claim.

### c.  NYCHRL Claim

        Plaintiff's failure to offer any evidence that she
applied for and was denied promotions or career opportunities is
also fatal to a failure-to-promote claim under the NYCHRL.  See,
e.g. Farzan v. Wells Fargo Bank, N.A., 12 Civ. 1217 (RJS)(JLC),
2013 WL 6231615 at *24 (S.D.N.Y. Dec. 2, 2013) (Cott, M.J.)
("Because he was never actually rejected for a position, Farzan
produces no evidence that he suffered an adverse action even
under the NYCHRL standard of merely differential treatment.")
(Report & Recommendation), adopted at, 12 Civ. 1217 (RJS)
(S.D.N.Y. Mar. 21, 2014) (Sullivan, D.J.), aff'd sub nom., Farzan
v. Genesis 10, 619 F. App'x 15 (2d Cir. 2015) (summary order);
Davis-Bell v. Columbia Univ., 851 F. Supp. 2d 650, 679-80
(S.D.N.Y. 2012) (McMahon, D.J.)(plaintiff's failure to offer "any
evidence that she applied for a position -- or even asser[t] that
she generally requested promotions" failed to establish a prima
facie case under the NYCHRL).
        On the other hand, plaintiff's pay discrimination claim
also survives under the more liberal NYCHRL standard for the same

reasons the federal and state claims survive.  In addition, for the same reasons discussed above with respect to plaintiff's NYSHRL claims, the motion for summary judgment on the pay dis-crimination claim under the NYCHRL is granted as to defendants McCarthy, Parker, Bodnar and Desiderio and denied as to defen-dants Hoffman and Lynch.

### d.   Summary

Thus, defendants' motion for summary judgment is granted as to plaintiff's claims under Title VII, the NYSHRL and the NYCHRL to the extent they are based on the theory that plaintiff was improperly denied promotions and career opportuni-ties.  The motion is also granted to the extent plaintiff claims gender-based discrimination with respect to pay.  The motion is denied with respect to the Bank, Hoffman and Lynch to the extent that plaintiff alleges race-based discrimination with respect to pay but granted as to McCarthy, Parker, Bodnar and Desiderio.

### 3.   Sexual Harassment and Hostile Work Environment

#### a.   Title VII and NYSHRL Claims

Plaintiff alleges a hostile work environment arising out of gender- and race-based discrimination.  In support of

47

these claims, plaintiff relies on (1) unflattering photos and videos of plaintiff that she claims were circulated in the workplace, (2) co-workers' mocking comments about plaintiff based on the alleged photos and videos, (3) a co-worker's display of "Homies" figurines and (4) certain co-workers' display of "ethnic" hair care products as "joke props" and a 50-Cent poster (Pl. Decl. ¶¶ 20-39). These incidents are either unsupported by any admissible evidence or are not sufficiently severe and pervasive to sustain a hostile work environment claim.

To the extent plaintiff relies on the circulation of unflattering photos and videos, she has offered no admissible evidence that these materials ever existed. Plaintiff admitted that she never saw these materials and that no one she knew, including her friends, could confirm having seen them (Pl. Rule 56.1 Stmt. ¶ 20). Plaintiff's only evidence on this issue is her testimony that one employee, Daniel Conroy, told her that he "took [her] off the internet" (Pl. Decl. ¶¶ 22, 38; Pl. Dep. 204). Plaintiff's testimony based on this vague and unsubstantiated statement is inadmissible hearsay and is insufficient to create an issue of fact concerning the existence of the photos and videos. See Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004) ("[A]n affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant

48

is insufficient to create a genuine issue for trial." (citation
omitted)); see also Fed.R.Civ.P. 56(c)(4).

Plaintiff's unsupported testimony concerning the
allegedly derogatory comments and gestures by co-workers are also
insufficient to create a genuine issue of fact as to the exis-
tence of a hostile work environment.  Except for one comment
discussed further below, none of these comments can reasonably be
interpreted to refer to plaintiff's race or gender; rather, they
appear to be referring to plaintiff's mental state, which is not
the basis of any claim in this case.  A plaintiff's "belief,
based on no evidence other than gut instinct that [her supervi-
sor] treated her with hostility because of her race, [or gender]
cannot justifiably support an inference of discrimination when
nothing in the record remotely links [the supervisor's] treatment
of [plaintiff] to her race [or gender]."  Taylor v. Records, 94
Civ. 7689 (CSH), 1999 WL 124456 at *16 (S.D.N.Y. Mar. 8, 1999)
(Haight, D.J.) (emphasis in original; alterations added); see
also Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (sum-
mary judgment motion cannot be defeated "on the basis of conjec-
ture or surmise"); Lioi v. N.Y.C. Dep't of Health & Mental
Hygiene, 914 F. Supp. 2d 567, 583 (S.D.N.Y. 2012) (Engelmayer,
D.J.) ("[A] plaintiff cannot establish a prima facie case based
on 'purely conclusory allegations of discrimination, absent any

49

concrete particulars.'" (citation omitted)). Thus, while these comments may have upset plaintiff, they do not provide support for plaintiff's race or gender discrimination claims.

The only comment identified by plaintiff that arguably refers to race or gender -- that an unidentified person called her a "crazy black bitch" (Pl. Decl. ¶ 31) -- fails to give rise to a genuine issue of fact as to the existence of a hostile environment. Plaintiff does not identify the speaker or provide context for the alleged discrimination. This single comment, although offensive, is at best a stray remark and is not sufficiently severe or pervasive to support a hostile environment claim. See, e.g., Augustin v. Yale Club of N.Y.C., 03 Civ. 1924 (KMK), 2006 WL 2690289 at *22 (S.D.N.Y. Sept. 15, 2006) (Karas, D.J.), aff'd, 274 F. App'x 76 (2d Cir. 2008) (summary order) (even if the four or five instances in which plaintiff was called a "black bitch," or a variation thereof, could be imputed to her employer, the "infrequent and sporadic nature of the remarks at issue, over the course of five years, [is] insufficient, as a matter of law, for Plaintiff to maintain a hostile work environment claim" (citing cases)); see also Fleming v. MaxMara USA, Inc., 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (noting that "we have found a hostile work environment only where such a racially-harassing comment is one of many

50

racially-motivated comments" and concluding that no hostile work environment existed where defendants were rude to plaintiff and wrongly excluded her from meetings); <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." (citations, alteration and internal quotation marks omitted)).[18]

Plaintiff's allegations that certain white male employees kept allegedly racially offensive "Homies" figurines, ethnic hair care products and an offensive 50-Cent poster on or around their desks are also insufficient to sustain a hostile environment claim.  Plaintiff does not assert that these materials were directed at her race or gender; she testified that she told her supervisor that "some of the employees on the west side have things that could be deemed offensive" (Pl. Dep. 129; <u>see also</u> Pl. Dep. 124, 137).  Plaintiff also could not remember when or

---

[18]Plaintiff's argument that defendants' failure to investigate these incidents properly and thoroughly caused the situation to get worse provides no succor for her hostile environment claims (Pl. Mem. at 10).  Plaintiff fails to provide any facts demonstrating how the alleged discrimination got worse; indeed, her complaints about discrimination in 2002 and 2006 appear to be based on the same conduct (Pl. Rule 56.1 Stmt. ¶¶ 5, 15-16, 18, 38; Rogatnick Decl., Ex. 17).

for how long the materials were displayed and could not identify which figurines were on the employees' desks (Pl. Rule 56.1 Stmt. ¶¶ 41, 46, 47; Pl. Dep. 118-24, 129-30, 134-35), belying any claim that their display was "continuous" and "pervasive."   No reasonable jury could find that the presence of these materials was sufficiently severe and pervasive to constitute a hostile work environment.   See, e.g., Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 319 (2d Cir. 1999) (holding that prolonged display of photos of nude and partially clothed men in a shared office did not constitute a hostile work environment); Hudson v. Fischer, No. 06-CV-1534, 2008 WL 5110974 at *1-*2, *5-*6 (N.D.N.Y. Dec. 2, 2008) (co-worker's operating a mechanical figurine of a male with his pants pulled down that emitted moans and groans when a pen was inserted into its buttocks did not constitute hostile work environment because it was a single isolated incident, did not target plaintiff's gender and did not objectively alter the conditions of plaintiff's employment).

Even viewed in their totality, there is nothing in the record to indicate that any harassment plaintiff experienced by overhearing comments about the alleged photos and videos and viewing the poster, figurines and hair products was "sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment." Alfano v.

52

Costello, supra, 294 F.3d at 373 (internal quotation marks and citation omitted); see e.g., Devers v. SNC-Lavalin Generation, Inc., No. 12 CV 3747(RJD)(CLP), 2014 WL 4954623 at *4-*5 (E.D.N.Y. Sept. 30, 2014) (holding that display of three Confederate flag stickers in conjunction with isolated insensitive remarks such as "big black buck" were not sufficient to support a hostile work environment claim); Forts v. City of New York Dep't of Correction, 00 Civ. 1716 (LTS)(FM), 2003 WL 21297299 at *6 (S.D.N.Y. June 5, 2003) (Swain, D.J.) (comments about sex in a car, allegedly lewd "looks" directed at plaintiff, comments that black people were uncivilized and that slavery kept them from killing each other and a poster advertising a sex store taped to plaintiff's locker were "isolated incidents that do not meet the 'severe and pervasive' standard of a race and/or sex-based hostile work environment claim"); Bailey v. Colgate-Palmolive Co., 99 Civ. 3228 (CBM), 2003 WL 21108325 at *19, *22-*23 (S.D.N.Y. May 14, 2003) (Motley, D.J.) (plaintiff's exposure over a ten-year period to the word "nigger" both through oral statements and statements in corporate documents, defendant's use of the term "nigger soap" to refer to soap of inferior quality or soap residue, co-worker's use of the terms "nigger" and "kaffa," and corporate logo for product entitled "Darkie Toothpaste" which depicted "'a smiley, black face, black top-hatted bright-eyed

minstrel,'" held insufficient to constitute a hostile environment where such incidents were unrelated and sporadic), <u>aff'd</u>, 93 F. App'x 321 (2d Cir. 2004) (summary order); <u>Stembridge v. City of New York</u>, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) (Motley, D.J.) (granting summary judgment because the incidents plaintiff alleged, including references to plaintiff as an "uppity nigger" and the hanging of a black doll on a doorframe near plaintiff's workstation, were insufficient "to support a finding that his workplace was objectively abusive and hostile").[19]

Thus, defendants have demonstrated that they are entitled to summary judgment on plaintiff's hostile work environment claims under Title VII and the NYSHRL.

b.  <u>NYCHRL Claim</u>

Plaintiff has also failed to demonstrate the existence of factual issues sufficient to defeat summary judgment with respect to her hostile environment claims under the NYCHRL. Plaintiff has presented no admissible evidence that the alleged photos and videos existed, that she was subjected to discrimina-

---

[19]Because plaintiff has not demonstrated the existence of a genuine issue of fact concerning the existence of a hostile environment, it is not necessary to reach defendants' argument that they have an affirmative defense because they took reasonable care to prevent and correct the discrimination (<u>Compare</u> Def. Mem. at 19-20 <u>with</u> Pl. Rule 56.1 Stmt. ¶ 15).

tory comments or that the poster, figurines and hair care prod-
ucts were directed at her or were discriminatory; in short,
plaintiff has not put forward evidence suggesting that she was
subject to the allegedly offensive conduct because of her race or
gender, a necessary element of a hostile work environment claim
under the NYCHRL.  See Fenner v. News Corp., 09 Civ. 09832 (LGS),
2013 WL 6244156 at *15 (S.D.N.Y. Dec. 2, 2013) (Schofield, D.J.)
(granting summary judgment on NYCHRL hostile work environment
claim in part because "secondhand stories of discriminatory
comments sporadically directed at other employees, while not
irrelevant to assessing the totality of circumstances, in this
case do not show that Plaintiffs were treated differently from
employees not in their protected group because of their race."),
citing Woodard v. TWC Media Solutions, Inc., 09 Civ. 3000
(BSJ)(AJP), 2011 WL 70386 at *12-*13 (S.D.N.Y. Jan. 4, 2011)
(Jones, D.J.) (granting employer summary judgment on Title VII,
NYSHRL and NYCHRL claim where plaintiff relied heavily on sec-
ond-hand stories of harassment), aff'd sub nom., Lawless v. TWC
Media Solutions, Inc., supra, 487 F. App'x 613; Lennert-Gonzalez
v. Delta Airlines, Inc., 11 Civ. 1459 (JMF), 2013 WL 754710 at *8
(S.D.N.Y. Feb. 28, 2013) (Furman, D.J.) (granting summary judg-
ment on NYCHRL hostile work environment claim where evidence
suggested hostility was based on personal animosity).  In addi-

tion, even under the NYCHRL, plaintiff's claim that she was once called a "crazy black bitch" does not allege conduct that is sufficiently continuous or pervasive to sustain a hostile work environment claim and does not constitute anything more than a petty slight. See, e.g. Short v. Deutsche Bank Sec., Inc., 79 A.D.3d 503, 504, 506, 913 N.Y.S.2d 64, 66-67 (1st Dep't 2010) (granting summary judgment on plaintiff's NYCHRL hostile work environment claim because the manager's conduct in the workplace, including allegation that "he created a 'misogynistic culture' in which men entertained clients at strip clubs" were "nothing more than non-actionable petty slights and minor inconveniences . . . which in any event may be viewed by a reasonable employee as a function of [the manager's] personal management style, unrelated to gender discrimination"); Williams v. N.Y.C. Hous. Auth., supra, 61 A.D.3d at 80, 872 N.Y.S.2d at 41 ("petty slights and trivial inconveniences" do not create a hostile work environment under NYCHRL); see also Macshane v. City of New York, 06-CV-06024, 06-CV-06025, 06-CV-407, 06-CV-4817, 06-CV-4933, 06-CV-4935, 06-CV-6175, 06-CV-6278, 06-CV-6297, 06-CV-6732 (RRM)(RML), 2015 WL 1298423 at *27 (E.D.N.Y. Mar. 23, 2015) ("single incident involving the arrangement of animal figurines [in a sexually suggestive position] on [employee's] desk [was] not sufficient to give rise to harassing conduct even under the

56

liberal standard of the NYCHRL, nor does [it] give rise to an inference of gender-based discriminatory animus solely because of its sexual overtones."), -- F. App'x --, No. 15-1358, 2016 WL 3554391 (2d Cir. June 30, 2016) (summary order).

Therefore, defendants are also entitled to summary judgment on plaintiff's hostile work environment claim under the NYCHRL because plaintiff has failed to create an issue of fact as to whether she was subjected to harassment due to her race or gender.

### 4.  Retaliation

#### a.  Title VII and NYSHRL Claims

Plaintiff's retaliation claims are based on events that allegedly followed three claimed instances of protected activity by plaintiff:  (1) plaintiff's May 23, 2006 letter alleging that she had been the victim of discrimination (Complaint ¶¶ 46-47); (2) plaintiff's complaints concerning pictures and videos of her that were allegedly circulated in the workplace (Complaint ¶¶ 39, 76, 107, 117, 127, 137) and (3) other, unspecified complaints of discrimination (Complaint ¶¶ 75, 117, 127).  It is not entirely clear whether plaintiff's complaints concerning the videos and pictures of her and the other unspecified complaints of discrimi-

57

nation are distinct from her May 2006 letter or were part of her May 2006 letter; I shall assume that each constitutes a distinct complaint of discrimination.  For the reasons discussed below, plaintiff's retaliation claims do not survive defendants' motion.

Plaintiff claims that after she submitted her May 2006 letter, defendants retaliated against her by responding more severely to her persistent lateness and by giving her written warnings that further late arrivals to work would result in termination (Pl. Mem. at 23-24).  Plaintiff testified that she did not take the warnings concerning her tardiness that pre-dated her May 2006 letter seriously because they were not in writing and they did not threaten her with termination (Pl. Dep. 286-89, 294, 296-97).  Plaintiff testified that she received the first allegedly retaliatory written warning for lateness that threat-ened termination only four weeks after she sent the May 2006 complaint letter (Pl. Dep. 296-97; Pl. Mem. at 24).

Assuming plaintiff has adequately demonstrated a prima facie case of retaliation based on the written lateness warnings, defendants have stated a non-discriminatory reason for these adverse actions and plaintiff has not demonstrated that defen-dants' reasons are, in fact, a pretext for retaliation.  Defen-dants cite the good faith belief of Darlane Hoffman, plaintiff's supervisor, that plaintiff violated the Bank's policy by continu-

ally arriving late for work despite multiple warnings.   In
support of this contention, defendants cite turnstile reports
documenting plaintiff's late arrivals in 2005 and 2006, Hoffman's
notes regarding her discussions with plaintiff concerning her
lateness, Hoffman's testimony and plaintiff's own admissions (Pl.
Rule 56.1 Stmt. ¶¶ 67-78).   Although the parties dispute when
Hoffman first gave plaintiff a "final" warning that any further
lateness would result in termination, plaintiff does not dispute
that this final warning came after several verbal warnings (Pl.
Rule 56.1 Stmt. ¶¶ 71-76; Pl. Dep. 285-89, 295-99).   Thus,
defendants have proffered a legitimate, non-discriminatory reason
for escalating plaintiff's lateness warnings to "final warnings"
that threatened termination.

          Plaintiff has not satisfied her burden of offering
evidence that, viewed in the light most favorable to plaintiff,
could permit a reasonable jury to conclude that defendants'
stated rationale is a pretext for retaliation.   Plaintiff does
not dispute that she was chronically late for work nor does she
cite any inconsistencies in defendants' stated non-discriminatory
reasons for the lateness warnings (see Pl. Rule 56.1 Stmt. ¶ 68;
Pl. Mem. at 24).   Rather, plaintiff admitted in her deposition
that Hoffman often verbally reprimanded her for arriving late to
work, even before plaintiff submitted her May 2006 complaint

59

letter (Pl. Dep. 285-89, 295-99).  In support of her claim of
pretext, plaintiff relies principally on her own speculation that
she was singled out and the temporal proximity between her
written complaint letter and the first lateness warning threaten-
ing her with termination (Pl. Decl. ¶¶ 41-42).  These assertions
are either unsupported or insufficient to carry plaintiff's
burden of showing pretext.

    First, plaintiff's argument that the Bank enforced its
lateness policy inconsistently and that she was singled out is
unsupported by any admissible evidence.  Plaintiff asserts that
"other employees who arrived late or later than me were never
placed on 'warning or final warning' as there was no enforcement
of arrival time until my complaint" (Pl. Decl. ¶ 42) and that the
Bank's code of conduct is "loosely if at all enforced against non
minorities and male employees" (Pl. Decl. ¶ 44; see also Pl.
Decl. ¶¶ 44-47 (identifying alleged violations of Bank policies
by unidentified individuals)).  Plaintiff did not testify that
she has any personal knowledge of other employees' disciplinary
records and has not identified any specific similarly situated
employees that violated Bank policy regarding lateness in a
manner similar to plaintiff and who were treated better than
plaintiff.  Plaintiff's testimony is, therefore, speculative and
does not create an issue of fact sufficient to rebut defendants'

proffered non-retaliatory reason.  See Barkley v. Penn Yan Cent. School Dist., 442 F. App'x 581, 585 (2d Cir. 2011) (summary order) (inadmissible hearsay and testimony not based on personal knowledge are insufficient to create an issue of fact that will defeat summary judgment); White v. Eastman Kodak Co., 368 F. App'x 200, 202 (2d Cir. 2010) (summary order) (affirming summary judgment on retaliation claim because "[a]lthough [plaintiff] argues at length that [defendant's] asserted reason for firing him was pretextual, he presents no evidence to support this allegation"); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (plaintiff's "conclusory allegations" of pretext were insufficient to rebut defendant's non-retaliatory reasons that plaintiff's work was below standard, that she received poor reviews and that she was only terminated after she repeatedly failed to follow instructions); see also Ferraro v. Kellwood Co., 440 F.3d 96, 100 (2d Cir. 2006) (affirming grant of summary judgment in discrimination case where plaintiff's claim of pretext was unsupported by any evidence other than her own speculation).  Plaintiff has offered no admissible evidence to show that defendants did not discipline other employees who violated Bank policy, and, therefore, she has not shown any inconsistency in defendants' application of the lateness warn-ings.

61

Second, although the close temporal proximity between plaintiff's written complaint and the final warning threatening her job (one month) can be sufficient to support an inference of causation at the <u>prima</u> <u>facie</u> stage, it is insufficient to show pretext under Title VII or the NYSHRL. <u>See</u> <u>El Sayed v. Hilton Hotels Corp.</u>, 627 F.3d 931, 933 (2d Cir. 2010) (<u>per</u> <u>curiam</u>) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a <u>prima</u> <u>facie</u> case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext. . . .  Indeed, a plaintiff must come forward with some evidence of pretext in order to raise a triable issue of fact."); <u>accord</u> <u>Ya-Chen Chen v. City Univ. of New York</u>, <u>supra</u>, 805 F.3d at 72; <u>Grasso v. EMA Design Automation, Inc.</u>, <u>supra</u>, 618 F. App'x at 38; <u>Abrams v. Dep't of Pub. Safety</u>, 764 F.3d 244, 254–55 (2d Cir. 2014).

Thus, plaintiff has not created an issue of fact sufficient to defeat summary judgment with respect to her Title VII and NYSHRL retaliation claims based on her May 2006 letter.

Plaintiff also has not offered sufficient evidence to create a genuine issue of fact that defendants retaliated against her for allegedly reporting that salacious photographs and videos of plaintiff were circulating in the workplace.  Plaintiff claims

that defendants retaliated against her for these complaints by conducting deficient investigations and failing to keep the investigations confidential.[20]  Plaintiff admits that defendants conducted two investigations of her complaints -- one in 2002 and one in 2006 (Pl. Rule 56.1 Stmt ¶¶ 15-19).  Plaintiff contends that, because the investigations were faulty and were disclosed to others at the Bank, the harassment continued and worsened (Pl. Decl. ¶¶ 21, 36-39).  However, as discussed above, there is no evidence to support that the photos and videos ever existed. Even if I assume the truth of plaintiff's claim that the harass- ment increased after the Bank's investigations, plaintiff offers no evidence that the Bank or any of the individual defendants instigated the harassment or that the harassment was in retalia- tion for plaintiff's complaints.  In addition, plaintiff's claim concerning the Bank's alleged failure to keep the investigations confidential makes no sense.  Because plaintiff had no personal knowledge of the alleged photos or videos, the Bank necessarily would have had to ask other employees about these items; the lack

---

[20]Defendants cite Fincher v. Depository Trust & Clearing Corp., supra, 604 F.3d at 721-22, to argue that plaintiff cannot rely on defendants' failure to investigate her claims to demon- strate retaliation.  Unlike the plaintiff in Fincher, however, plaintiff does not assert that defendants failed to investigate her claims at all -- she asserts that in retaliation for her complaints, the Bank intentionally conducted deficient investiga- tions.

of confidentiality was an inevitable consequence of plaintiff's complaints and cannot, therefore, be the product of retaliatory animus.  Although plaintiff asserts that after one investigation some security officers made "snide comments loud enough for [her] to hear," she does not identify the officers or explain how, if at all, the comments were connected to her complaints regarding the photos and the videos (Pl. Decl. ¶ 39).  Thus, plaintiff has failed to proffer any evidence to show that defendants' investigations were adverse actions or that they were conducted in a deficient manner as a result of retaliatory animus.  See, e.g. Flood v. UBS Glob. Asset Mgt., Inc., 10 Civ. 00374 (RJH), 2012 WL 288041 at *17 (S.D.N.Y. Feb. 1, 2012) (Holwell, D.J.) (granting summary judgment where plaintiff argued that defendants retaliated against her by using investigation to harm her reputation because plaintiff "submitted no evidence to suggest that her co-workers' awareness of her complaint was the reason for their negative comments"); cf. Scoppettone v. Mamma Lombardi's Pizzico, Inc., 523 F. App'x 73, 75-76 (2d Cir. 2013) (summary order) (granting summary judgment on retaliation claim because there was "insufficient evidence to enable a reasonable jury to find that the failure to fire [plaintiff's alleged harasser] -- or deficiencies in the investigation that led to such failure -- amounted to more than mere negligence." (citation omitted)).

Thus, defendants are entitled to summary judgment on plaintiff's retaliation claim under Title VII and the NYSHRL based on defendants' allegedly faulty investigations.

Plaintiff's remaining basis for her retaliation claims is her general allegation that "defendant[s] intentionally and willfully harassed her and permitted her to be harassed in employment by retaliating against Plaintiff for exercising her lawfully protected right to formally complain of Defendants' discrimination and sexual harassment" (Complaint ¶ 75; see also Complaint ¶¶ 117, 127). Plaintiff also asserts that she was "consistently" denied "Promotional Increases and Job Title changes" (Pl. Decl. ¶ 16) and that after plaintiff "informed [Hoffman] of [plaintiff's] belief that [she] was on a pay disparity with [her] colleagues who were Office Managers" (Pl. Decl. ¶ 18) defendants Hoffman and Lynch told her that she was "'not to expect promotions or certain positions because they won't be offered to [her]'" (Pl. Decl. ¶ 17). Although plaintiff's assertions are unclear, I will construe paragraphs 16 through 18 of plaintiff's declaration to be an elaboration of paragraph 75 of the complaint and an attempt to assert that in response to her complaints of unequal pay, defendants retaliated against her by denying her promotions (See Def. Mem. at 25).

65

If plaintiff complained of race discrimination with respect to her salary and salary review cycle, she engaged in protected activity.  As discussed above, plaintiff has created an issue of fact as to her unequal pay discrimination claim.  Thus, if plaintiff's testimony is credited, her complaint concerning pay discrimination could be found to be a complaint regarding conduct that she reasonably believed violated Title VII, thereby satisfying the "protected activity" element of a prima facie case.  See Cooper v. New York State Dep't of Labor, supra, 819 F.3d at 678, 680-81.

However, plaintiff has not shown any adverse action following these complaints -- she has not presented any evidence that, in response to her complaints of pay discrimination, defendants retaliated against her by denying her promotions or "promotional increases."  As discussed above, plaintiff admits that she did not apply for any other positions at the Bank, and cannot, therefore, validly claim that she was denied promotions (Pl. Dep. 222-23; Pl. Rule 56.1 Stmt. ¶¶ 50, 52).  Plaintiff also does not explain how she was retaliated against through an alleged denial of "promotional increases."  To the extent plain-tiff is asserting that, in retaliation for her complaints of unequal pay, defendants continued to pay her less than similarly situated office managers, this argument is circular, vague and

66

unsupported by any admissible evidence.  Thus, plaintiff's claims under Title VII and the NYSHRL that defendants retaliated against her for her complaints of pay discrimination does not survive summary judgment because plaintiff has not presented any evidence that she was subject to any retaliation for these complaints.

Thus, defendants are entitled to summary judgment with respect to plaintiff's retaliation claims under Title VII and the NYSHRL.

b.  <u>NYCHRL Claim</u>

Defendants are also entitled to summary judgment on plaintiff's NYCHRL retaliation claim.

Plaintiff has not offered any evidence that defendants' reasons for the lateness warnings she received after her May 2006 letter were pretextual.  Plaintiff's allegations of temporal proximity alone are also insufficient to demonstrate pretext even under the NYCHRL.  See <u>Ya-Chen Chen v. City Univ. of New York</u>, <u>supra</u>, 805 F.3d at 77 (NYCHRL claim failed to survive summary judgment because plaintiff presented "no evidence" to rebut defendant's legitimate non-retaliatory basis for the adverse action and temporal proximity alone was insufficient to show pretext); <u>Tomizawa v. ADT LLC</u>, 13-CV-6366 (MKB)(LB), 2015 WL 5772106 at *3, *32 (E.D.N.Y. Sept. 29, 2015) (even under the

67

NYCHRL's more relaxed standard, "[p]laintiff's sole evidence of pretext, the temporal proximity between Plaintiff's complaints and Defendants' discipline, cannot demonstrate that Defendants' progressive discipline, initiated before Plaintiff's protected activity and supported by Plaintiff's poor performance record, was pretext for retaliation."); E.E.O.C. v. Bloomberg L.P., supra, 967 F. Supp. 2d at 900 (dismissing NYCHRL claim and holding that temporal proximity alone did not rebut defendant's non-discriminatory reason supported by "clear evidence that [plaintiff's] performance continued to decline"); see also Melman v. Montefiore Med. Ctr., supra, 98 A.D.3d at 128-29, 946 N.Y.S.2d at 42-43 (granting summary judgment on NYCHRL retaliation claim because defendant's continuation of course of conduct that had begun before plaintiff complained was not retaliatory).

The other two bases for plaintiff's retaliation claims -- the allegedly faulty investigations and the denial of "promotional increases" -- also fail under the more liberal NYCHRL standard because, even assuming that plaintiff suffered any adverse action, plaintiff has not even asserted (much less presented evidence) that defendants' conduct dissuaded her from engaging in protected activity.  Plaintiff admits that despite the Bank's alleged failure to conduct a proper investigation in 2002, she continued to complain about the photos and videos to

68

her supervisor and to Human Resources (Pl. Decl. ¶ 40; Pl. Rule
56.1 Stmt. ¶¶ 26, 74-76).  Plaintiff also asserts that she
complained of pay discrimination "[b]eginning on or about May
2001" (Pl. Decl. ¶ 5), at some unidentified time after she became
an office manager in December 2004, (Pl. Decl. ¶¶ 17-19), and
again in her May 23, 2006 letter to the Bank summarizing her
claims of discrimination and harassment (Pl. Decl. ¶ 40;
Rogatnick Decl. Ex. 17 at p. 3).  Although "the 'chilling effect'
of particular conduct is context-dependent, and . . . a jury is
generally best suited to evaluate the impact of retaliatory
conduct in light of those realities," Williams v. N.Y.C. Hous.
Auth., supra, 61 A.D.3d at 71, 872 N.Y.S.2d at 34, given plain-
tiff's admissions that she was not deterred from making further
complaints about the alleged discrimination, no reasonable jury
could conclude that defendants' allegedly adverse actions were
reasonably likely to deter a person in plaintiff's position from
engaging in protected activity.

        Therefore, defendants are also entitled to summary
judgment with respect to plaintiff's retaliation claim under the
NYCHRL.

69

V.   Conclusion

Accordingly, for all the foregoing reasons, defendants' motion for summary judgment (Docket Item 74) is granted in part and denied in part.  Defendants' motion for summary judgment is granted as to the following claims:

> 1.  hostile work environment based on race, sex and color[21] in violation of Title VII, the NYSHRL and the NYCHRL;
>
> 2.  violation of the Equal Pay Act;
>
> 3.  disparate treatment based on race, sex and color in promotions and denial of career opportunities in violation of Title VII, the NYSHRL and the NYCHRL;
>
> 4.  retaliation in violation of Title VII, the NYSHRL and the NYCHRL;
>
> 5.  Title VII claims brought against the individual defendants; and
>
> 6.  pay discrimination under the NYSHRL and the NYCHRL against defendants McCarthy, Parker, Bodnar and Desiderio.

---

[21]As noted above, although defendants' memoranda of law state that defendants are moving with respect to plaintiff's claims of color-based discrimination, defendants do not address these claims.  Nevertheless, the reasons that justify summary judgment dismissing some of plaintiff's claims are equally applicable to plaintiff's claims of color-based discrimination. For example, the absence of a sufficiently hostile environment precludes a hostile environment claim on any basis.  Accordingly, summary judgment dismissing some of plaintiff's color-based claims is appropriate notwithstanding defendants' failure to address these claims in their memoranda.

70

Defendants' motion for summary judgment is denied as to plaintiff's claims of race-based and color-based pay discrimination

> 1. in violation of Title VII, the NYSHRL and the NYCHRL against the Bank of New York Mellon; and

> 2. in violation of the NYSHRL and the NYCHRL against defendants Hoffman and Lynch.

Because the parties have indicated that some of the facts discussed herein implicate confidentiality concerns (Docket Item 73), this opinion will remain under seal for a period of fourteen days so that either party may request and justify specific redactions for confidentiality.  Any such requests must be supported by affidavits or declarations and memoranda of law. If I do not receive any request for redactions during the two week period the opinion will be unsealed.

Dated:  New York, New York
        August 15, 2016

                              SO ORDERED

                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

All counsel of record

71